1
2
3
4                    **UNITED STATES DISTRICT COURT**
5                           **DISTRICT OF NEVADA**
6
7    ROBIN S.,                                Case No. 2:24-cv-01594-NJK
8              Plaintiff,                                **Order**
9    v.
10   FRANK BISIGNANO,
11             Defendant.

12          This case involves judicial review of administrative action by the Commissioner of Social
13   Security ("Commissioner") denying Plaintiff's application for disability and disability insurance
14   benefits pursuant to Title II of the Social Security Act.  Currently before the Court is Plaintiff's
15   motion to reverse and remand.  Docket No. 9.  The Commissioner filed a responsive brief.  Docket
16   No. 12.  Plaintiff filed a reply.  Docket No. 13.  The parties consent to resolution of this matter by
17   the undersigned magistrate judge.  Docket No. 3; *see also* Gen. Order. 2023-12.

18   **I.      STANDARDS**

19          A.      Judicial Standard of Review

20          The Court's review of administrative decisions in social security disability benefits cases
21   is governed by 42 U.S.C. § 405(g).  *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).
22   Section 405(g) provides that, "[a]ny individual, after any final decision of the Commissioner of
23   Social Security made after a hearing to which he was a party, irrespective of the amount in
24   controversy, may obtain a review of such decision by a civil action...brought in the district court
25   of the United States for the judicial district in which the plaintiff resides."  The Court may enter,
26   "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing
27   the decision of the Commissioner of Social Security, with or without remanding the cause for a
28   rehearing."  *Id.*

                                              1

The Commissioner's findings of fact are deemed conclusive if supported by substantial evidence. *Id.* To that end, the Court must uphold the Commissioner's decision denying benefits if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). Substantial evidence is "more than a mere scintilla," which equates to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 139 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* In determining whether the Commissioner's findings are supported by substantial evidence, the Court reviews the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

Under the substantial evidence test, the Commissioner's findings must be upheld if supported by inferences reasonably drawn from the record. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). When the evidence will support more than one rational interpretation, the Court must defer to the Commissioner's interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Consequently, the issue before this Court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence.

It is incumbent on the Administrative Law Judge ("ALJ") to make specific findings so that the Court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. The ALJ's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. *See, e.g., Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

B.    Benefits Evaluation Process

The individual seeking disability benefits bears the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must

2

demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected...to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of his claim for disability. *See, e.g.*, 20 C.F.R. § 404.1514. If the individual establishes an inability to perform his prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). If at any step the ALJ determines that he can make a finding of disability or nondisability, a determination will be made and no further evaluation is required. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *see also* 20 C.F.R. § 404.1520(a)(4). The first step requires the ALJ to determine whether the individual is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. 20 C.F.R. § 404.1572(a)-(b). If the individual is currently engaging in SGA, then a finding of not disabled is made. If the individual is not engaging in SGA, then the analysis proceeds to the second step.

The second step addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits him from performing basic work activities. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is not severe when medical and other evidence does not establish a significant limitation of an individual's ability to work. *See* 20 C.F.R. §§ 404.1521, 404.1522. If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to the third step.

The third step requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20

3

C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.  If the individual's impairment or combination of impairments meet or equal the criteria of a listing and meet the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made.  20 C.F.R. § 404.1520(d).  If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the individual's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e).  The residual functional capacity is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. Social Security Rulings ("SSRs") 96-8p.  In making this finding, the ALJ must consider all of the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. § 404.1529.  To the extent that statements about the intensity, persistence, or functionally-limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must evaluate the individual's statements based on a consideration of the entire case record.  SSR 16-3p.  The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527.

The fourth step requires the ALJ to determine whether the individual has the residual functional capacity to perform his past relevant work ("PRW"). 20 C.F.R. § 404.1520(f).  PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established.  In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA.  20 C.F.R. §§ 404.1560(b), 404.1565.  If the individual has the residual functional capacity to perform his past work, then a finding of not disabled is made.  If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to the fifth and last step.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering his residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(g).  If the individual is able to do other work, then a finding of not disabled is made.  Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner.  The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do.  *Lockwood v. Comm'r, Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

## II.    BACKGROUND

### A.    Procedural History

On October 3, 2016, Plaintiff filed an application for disability and disability insurance benefits, and supplemental security income with an alleged onset date of September 30, 2013.  *See, e.g.*, Administrative Record ("A.R.") 294-297.  Plaintiff's application was denied initially and again on reconsideration.  A.R. 153-156, 162-164.  Plaintiff filed a request for a hearing before an administrative law judge.  A.R. 165-166.  On July 26, 2019, Plaintiff, Plaintiff's representative, and a vocational expert appeared for a hearing before ALJ John Cusker.  *See* A.R. 43-71.  On September 18, 2019, the ALJ issued an unfavorable decision finding that Plaintiff had not been under a disability through the date of the decision.  A.R. 130-146.  The Appeals Council granted Plaintiff's request for review and remanded her case back to the ALJ.  A.R. 147-152.

On January 6, 2021, Plaintiff, Plaintiff's representative, and a vocational expert appeared for a second hearing before ALJ Cusker.  *See* A.R. 73-96.  On February 26, 2021, the ALJ issued an unfavorable decision finding that Plaintiff had not been under a disability through the date of the decision.  A.R. 18-40.  The Appeals Council denied Plaintiff's request for review.  A.R. 953-958.  On August 28, 2024, Plaintiff commenced suit seeking judicial review.  Docket No. 1.

B.    The Decision Below

The ALJ's decision followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a).[1]  A.R. 18-40.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  A.R. 24.  At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, fibromyalgia, hypothyroidism, asthma, and obesity.  A.R. 24-25.  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  A.R. 25.  The ALJ found that Plaintiff has the RFC

> to perform light work as defined in 20 CFR 404.1567(b): She could lift and/or carry 20 pounds occasionally and 10 pounds frequently. She could stand and/or walk for 5 hours, and sit for more than 6 hours on a sustained basis in an 8-hour workday, with normal breaks.  She could occasionally push and/or pull hand and foot controls with both upper and lower extremities.  She needed a cane for prolonged ambulation, and over uneven surfaces.  She could occasionally climb ramps and/or stairs, but could not climb ladders, ropes, and/or scaffolds; she could occasionally balance, stoop, kneel, crouch, and crawl. She had to avoid concentrated exposure to wetness, vibration, fumes, odors, gases, poor ventilation, etc., and hazards.

A.R. 26-31.  At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a credit clerk and collection clerk.  A.R. 31.  Based on all of these findings, the ALJ found Plaintiff not disabled from the alleged onset date.  A.R. 31-32.

III.    ANALYSIS

Plaintiff submits that the ALJ failed to fully and fairly develop the record.  Docket No. 9 at 5.  Plaintiff submits that, because the state agency and consultative examiner did not review certain records, the ALJ's decision based on their opinions was unsupported.  *Id*. at 7.  The Commissioner responds that Plaintiff forfeited the issue and that, even if Plaintiff had preserved

---

[1] The five-step process is largely the same for both Title II and Title XVI claims.  For a Title II claim, however, a claimant must also meet insurance requirements.  20 C.F.R. § 404.130. The ALJ found that Plaintiff met the insured status requirement through December 31, 2016.  A.R. 24.

1  her assertion that the ALJ was obliged to further develop the record, her argument fails on the

2  merits.  Docket No. 12 at 4.[2]

3        Plaintiff further submits that the ALJ failed to articulate clear and convincing reasons for

4  discounting Plaintiff's symptom testimony.  Docket No. 9 at 10.  The Commissioner responds that

5  the ALJ reasonably discounted Plaintiff's self-reports because they conflicted with the medical

6  records.  Docket No. 12 at 5.

7        "[R]esidual functional capacity is the most [Plaintiff] can still do despite [his] limitations."

8  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC determination considers all medically

9  determinable impairments, including those that are not severe.  *Id*. at §§ 404.1545(a), 416.945(a).

10  The RFC assessment must consider all evidence in the record and "contain a thorough discussion

11  of the objective medical and other evidence."  *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir.

12  2017) (citing Social Security Ruling 96-8p, 61 Fed. Reg 34474, 34478 (July 2, 1996)).  "The RFC

13  is an administrative assessment of the extent to which an individual's medically determinable

14  impairments...may affect his or her capacity to do work-related physical and mental activities."  *Id*.

15  (quoting SSR 96-8p, 61 Fed. Reg at 34475).  "[A]t the administrative law judge hearing level...the

16  administrative law judge...is responsible for assessing [Plaintiff's] residual functional capacity."

17  20 C.F.R. §§ 404.1546(c), 416.946(c).  The residual functional capacity determination does not

18  need to copy the exact opinion of any particular doctor, but "the ALJ is responsible for translating

19  and incorporating clinical findings into a succinct" residual functional capacity.  *Rounds v.*

20  *Commissioner*, 795 F.3d 1177, 1185-86 (9th Cir. 2015), *as amended*, 807 F.3d 996, 1005-06 (9th

21  Cir. 2015).

22        A.      The ALJ's Evaluation of the Record

23        "In Social Security cases the ALJ has a special duty to fully and fairly develop the record

24  and to assure that the claimant's interests are considered."  *Smoler v. Chater*, 80 F.3d 1273, 1288

25  (9th Cir. 1996) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)).  This duty exists

26  even when the claimant is represented by counsel.  *Id*.  However, "when claimants are represented

27

28        _____

         [2] The Court's citations refer to the CM/ECF pagination.

1   by counsel, they must raise all issues and evidence at their administrative hearing in order to

2   preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999).

3          An ALJ "need not discuss all evidence presented." *Vincent ex rel. Vincent v. Heckler*, 739

4   F.2d 1393, 1394-95 (9th Cir. 1984). Yet, an ALJ "may not reject 'significant probative evidence'

5   without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (quoting *Vincent*,

6   739 F.2d at 1395). However, an ALJ "is not required to discuss evidence that is neither significant

7   nor probative..." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006 (9th Cir. 2003). A social

8   security claimant bears the burden of establishing that an ALJ's error prejudiced the outcome of

9   her decision. *See, e.g., Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Shinseki v.*

10  *Sanders*, 556 U.S. 396, 409 (2009)).

11         Plaintiff submits that neither the state agency doctors nor the consultative examiner

12  reviewed Plaintiff's relevant treatment records for her fibromyalgia. Docket No. 9 at 5. Therefore,

13  Plaintiff submits, the ALJ's decision based on these opinions should be deemed as unsupported.

14  *Id*. at 7. Further, Plaintiff submits that the fact that the state agency did not review certain records

15  should have triggered the ALJ's duty to further develop the record. *Id*. In response, the

16  Commissioner submits that, as an initial matter, Plaintiff forfeited the issue when her previous

17  attorneys confirmed that the record was complete during the 2019 and 2021 hearings. Docket No.

18  12 at 4. Further, the Commissioner submits that, almost no medical records were on file at the

19  initial level, on reconsideration, numerous records had been added, the Comprehensive Pain

20  Management records had been reviewed on reconsideration under a different name, and Dr.

21  Vogel's treatment records that were admitted later provided "identical clinical findings" as the

22  already considered Dr. Vogel records. *Id*. at 5.

23         On July 26, 2019, the ALJ held an administrative hearing. A.R. 43-71. Plaintiff was

24  represented by attorney Dustin Gomez for that hearing. A.R. 43. During the hearing, the ALJ

25  asked Plaintiff's counsel, "so the record is now complete with respect to relevant evidence, would

26  you agree?" A.R. 70. Plaintiff's counsel responded "yes, your Honor." *Id*. On January 6, 2021,

27  the ALJ held a second administrative hearing. A.R. 73-96. Plaintiff was represented by attorney

28  Laura Krank for that hearing. A.R. 73. During the hearing, the ALJ asked Plaintiff's counsel "is

1   the record complete?" A.R. 78. Plaintiff's counsel responded "yes, your Honor." *Id*. Plaintiff's

2   current contention that the record was not fully and fairly developed is therefore unpersuasive, as

3   Plaintiff's former counsel twice indicated that the record was complete. *See* A.R. 70, 78.

4        Further, Plaintiff submits that the state agency doctors and the consultative examiner failed

5   to review the relevant treatment records, including the MRI reports. Docket No. 9 at 5. For

6   example, Plaintiff submits that, during the 2021 hearing, her counsel informed the ALJ that the

7   state agency doctors did not review exhibits 1F-9F[3] and that the consultative examiner did not

8   review any records. Docket No. 9 at 6; *see also* A.R. 84. The ALJ confirmed that the state agency

9   doctors reviewed the exhibits. A.R. 84-85; *see also* A.R. 113-116 (confirming evidence that was

10  received and examined at the reconsideration level). Plaintiff's main argument seems to be that

11  neither the state agency doctors nor the consultative examiner *explained* or *discussed* these records.

12  *See* Docket No. 9 at 6. Plaintiff fails to provide any legal authority for her contention that each

13  medical record must be discussed, or that a failure to do so triggered the ALJ's duty to further

14  develop the record. While the ALJ has a special duty to develop the record fully and fairly to

15  ensure that the claimant's interests are considered, *see Tonapetyan v. Halter*, 242 F.3d 1144, 1150

16  (9th Cir. 2001), there is no indication that the record was not fully developed at the time of this

17  case. This duty is only triggered when there is ambiguous evidence or when the record is

18  inadequate to allow for proper evaluation of the record. *Id*. Thus, the Court finds no error in the

19  ALJ's decision to not further develop the record.

20

21

22

23

24

25

26

27   [3] Exhibits 1F-9F are progress notes from Comprehensive and Interventional Pain Management. A.R. 426-553. The Commissioner submits, and Plaintiff does not dispute, that the records under the source title of "Fabito Anesthesia & Pain SP," A.R. 113-116, are the

28  Comprehensive Pain Management records at issue. Docket No. 12 at 5, n. 3.

B.  The ALJ's Evaluation of Medical Opinion[4]

Plaintiff submits that there is a treating physician opinion in the record that the ALJ improperly rejected.[5]  Docket No. 9 at 9.  The Commissioner submits that substantial evidence supports the ALJ's evaluation of the medical opinion evidence.  Docket No. 12 at 9.

There are three types of medical opinions — treating, examining, and non-examining. *See Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995) (amended April 9, 1996).  For claims filed before March 27, 2017, as is the case here, each type is accorded different weight. 20 C.F.R. §§ 404.1527, 416.927.  Medical opinions and conclusions of treating physicians are accorded special weight because these physicians are in a unique position to know claimants as individuals, and because the continuity of their dealings with claimants enhances their ability to assess the claimants' problems. *See Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988).  The ALJ does not need to "accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  "[O]nly licensed physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting 20 C.F.R. § 404.1513(a)).  Physician assistants are not considered acceptable medical sources and are instead defined as "other sources" that are not entitled to the same deference as acceptable medical sources.  *Id*.  An ALJ may discount the opinion of an 'other source,' if he provides "reasons germane to each witness for doing so." *Id*. (internal citation omitted).

As a threshold matter, Mr. Urbahn is a certified physician assistant. A.R. 945.  Thus, his opinion does not qualify as a medical source, and he is not entitled to the same deference as a medical source opinion.

---

[4] Plaintiff spends multiple pages discussing Dr. Vogel.  *See* Docket No. 9 at 12-14.  It is unclear what argument Plaintiff is attempting to make with Dr. Vogel's opinion.  Plaintiff submits that the "ALJ should have compared the findings from the first back examination…to the next testing results." *Id*. at 13. Plaintiff provides no legal authority for her assertion.  Plaintiff also notes that Dr. Vogel's treatment notes contain internal inconsistencies. *Id*. at 14.  In any event, the ALJ already afforded little weight to Dr. Vogel's statement.  A.R. 30.

[5] The treating physician opinion at issue is a "physical medical source statement" submitted by Shepard D. Urbahn, PA-C, dated December 16, 2020.  A.R. 943-945.

1    The ALJ summarized Mr. Urbahn's opinion and gave the opinion was no weight.  A.R. 30.

2    Specifically, the ALJ found that Mr. Urbahn's opinion that Plaintiff could not walk a city block

3    and could stand and/or walk for 15 minutes at a time was incomplete.  *Id*.  The ALJ further noted

4    that Mr. Urbahn had been treating Plaintiff since October 2019, which is three years after the date

5    last insured. *Id*.; *see also* A.R. 943. The ALJ also found that Mr. Urbahn's opinion was inconsistent

6    with Dr. Cabaluna's opinion that Plaintiff could perform a reduced range of light work.  A.R. 30,

7    567-568.  Mr. Urbahn's opinion was also inconsistent with Plaintiff's own testimony that she can

8    walk up to 30 minutes per day and has been exercising since before 2016.  A.R. 30; *see also* A.R.

9    55.  Further, the ALJ noted that Mr. Urbahn's opinion referenced an MRI, A.R. 943, but that all

10   the references to MRIs in the record predate Mr. Urbahn's treating relationship.  A.R. 30, 429-431,

11   684.  Accordingly, the Court finds that the ALJ provided sufficient reasons to give no weight to

12   Mr. Urbahn's opinion.

13       C.    The ALJ's Evaluation of Plaintiff's Mental Impairment

14   Plaintiff submits that the ALJ did not provide clear and convincing reasons to reject her

15   mental impairment.  Docket No. 9 at 14.  The Commissioner submits that the ALJ found no

16   medical determinable impairment because there was a lack of objective evidence and "no treatment

17   records documenting mental health treatment prior to the date last insured."  Docket No. 12 at 8.

18   The ALJ concluded that medical reports showed that Plaintiff displayed appropriate affect

19   and demeanors, with no psychomotor function.  A.R. 31.; *see also* A.R. 770.  Other records showed

20   Plaintiff's normal behavior during examination and that Plaintiff scored high on a mini-mental

21   status exam.  A.R. 24; *see also* A.R. 35, 561-562.  The ALJ acknowledged that evidence related

22   to a period *after* the date last insured does show mental impairment.  A.R. 24; *see also* A.R. 579-

23   581.  However, that evidence does not establish the existence of an impairment during the relevant

24   period.  A.R. 24.  Accordingly, the Court finds that that the ALJ's finding regarding Plaintiff's

25   mental impairment supposed by substantial evidence.

26       D.    The ALJ's Evaluation of Plaintiff's Testimony

27   Credibility and similar determinations are quintessential functions of the judge observing

28   witness testimony, so reviewing courts generally give deference to such assessments.  *See, e.g.,*

1  *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986).  In the Social Security context,

2  "[t]he ALJ is responsible for determining credibility." *Andrews v. Shalala*, 53 F.3d 1035, 1039-

3  40 (9th Cir. 1995).  An ALJ's assessment of a claimant's testimony is generally afforded "great

4  weight" by a reviewing court.  *See, e.g., Gontes v. Astrue*, 913 F. Supp. 2d 913, 917-18 (C.D. Cal.

5  2012) (citing *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Circ. 1989) and *Nyman v. Heckler*, 779

6  F.2d 528, 531 (9th Cir. 1985)).  If an ALJ's determination to discount a claimant's testimony is

7  supported by substantial evidence, a court should not second-guess that determination.  *Chaudhry*

8  *v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012).[6]

9        The ALJ is required to engage in a two-step analysis to evaluate a claimant's testimony as

10  to pain and other symptoms: (1) determine whether the individual presented objective medical

11  evidence of an impairment that could reasonably be expected to produce some degree of pain or

12  other symptoms alleged; and (2) if so, whether the intensity and persistence of those symptoms

13  limit that individual's ability to perform work-related activities.  *See* Social Security Ruling 16-3p,

14  2017 WL 5180304.   In the absence of evidence of malingering, an ALJ may only reject a

15  claimant's testimony about the severity of symptoms by giving specific, clear, and convincing

16  reasons.  *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  Factors that an ALJ may

17  consider include inconsistent daily activities, an inconsistent treatment history, and other factors

18  concerning the claimant's functional limitations.  *See* Social Security Ruling 16-3p, 2017 WL

19  5180304.

20        Here, the ALJ determined that Plaintiff had degenerative disc disease of the lumbar spine,

21  fibromyalgia, hypothyroidism, asthma, and obesity.  A.R. 24.  Although the ALJ found that

22  Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged

23  symptoms, the ALJ concluded that Plaintiff's testimony concerning the intensity, persistence, and

24  limiting effects of the symptoms was not entirely consistent with the medical evidence and other

25  evidence in the records.  A.R. 27.  Therefore, the ALJ discounted the credibility of Plaintiff's

26

27        [6] The regulations previously asked the ALJ to assess "credibility."  Social Security Ruling 96-7p.  The current regulations require the ALJ to instead "evaluate" the claimant's statements.  Social Security Ruling 16-3p.  This change does not alter the deferential nature of the Court's

28  review.

testimony regarding the intensity, persistence, and limiting effects of her symptoms.  As no evidence of malingering exists in the record, the ALJ was required to provide specific, clear, and convincing reasons for rejecting Plaintiff's testimony based on a consideration of the entire case record, including Plaintiff's testimony at the 2019 hearing and the 2021 hearing.

In 2019, the ALJ stated:

> [Plaintiff] has made some inconsistent statements and acknowledged activities, which suggest she is not as limited as she has alleged.  [Plaintiff] alleged she was "always in pain," had limited mobility, and barely enough energy to grab something to eat.  To the contrary, [Plaintiff] wrote in her December 2016 Function Report that she went out every 3 weeks, drove a car short distances, went out alone, took her dogs to the back yard, and to the park (with her husband) for an hour at a time: she could shower, and exercise for 1 hours 3 times a week.

A.R. 138 (internal citations omitted).

In 2021, the ALJ stated:

> I noted some inconsistencies in my prior decision, and [Plaintiff's] testimony at the 2021 hearing revealed more inconsistencies respecting [Plaintiff's] allegations and activities…At the July 26, 2019 hearing, [Plaintiff] testified that she took Percocet, gabapentin [sic], Lidoderm, Butrans, levothyroxine [sic], and atorvastatin [sic].  She testified that the medications were helpful.  However, she reported side[] effects, including weight gain and sleepiness.  She admitted that her physical therapist had encouraged her to exercise.  The therapist wanted her to walk up to 30 minutes per day, and she did.  She used five-pound weights.  She had been exercising since before 2016, and exercised for about an hour.  At the January 6, 2021, hearing, [Plaintiff] testified she went to the gym.  She walked on the treadmill for 15 minutes, and tried to use the bike, if she could, for 15 minutes, and tried to use the bike, if she could for 15 minutes.  She could not do both because she became too worn out.  She admitted Dr. Rainer Vogel told her to exercise.

A.R. 27-28 (internal citations omitted).

Plaintiff submits that the ALJ erred in failing to provide clear and convincing reasons to reject her subjective limitations.  Docket No. 9 at 10.  The Commissioner responds that the ALJ explained Plaintiff's subjective symptom complaints were inconsistent with the objective medical evidence, her lack of apparent distress, her improvements with medical treatment, and her daily activities, and that these findings are supported by substantial evidence.  Docket No. 12 at 6.

1    In discounting Plaintiff's credibility, the ALJ found that the record shows that Plaintiff's
2   impairments could reasonably be expected to cause the alleged symptoms, but not to the extent
3   alleged by Plaintiff.  A.R. 27.  The ALJ based this finding on the record of evidence, which did
4   not support the degree of limitations alleged.  *Id*.  The Court finds that the ALJ properly considered
5   the objective medical evidence in the record when discounting Plaintiff's symptom testimony.
6   "When objective medical evidence in the record is inconsistent with the claimant's subjective
7   testimony, the ALJ may indeed weigh it as undercutting such testimony."  *Smartt v. Kijakazi*, 53
8   F.4th 489, 498 (9th Cir. 2022).  Further, when discounting Plaintiff's symptom testimony, "the
9   'clear and convincing' standard requires the ALJ to show his work."  *Id*. at 499.  "The standard
10  isn't whether [the C]ourt is convinced, but instead whether the ALJ's rationale is clear enough that
11  it has the power to convince."  *Id*.  The ALJ does not need to recite "magic words."  *Magallanes*
12  *v. Bowen,* 881 F.2d 747, 755 (9th Cir.1989) ("As a reviewing court, we are not deprived of our
13  faculties for drawing specific and legitimate inferences from the ALJ's opinion").

14    Here, the ALJ pointed to specific evidence in the record that contradicted Plaintiff's
15  symptom testimony.  For example, Plaintiff testified that she should not do anything straining and
16  could not lift, squat, stand, walk or sit too long, and could not kneel or climb stairs.  A.R. 26; *see*
17  *also* 54, 65.  Plaintiff further testified that she spent about 16 hours in bed.  A.R. 52.  However,
18  the ALJ noted that examination notes consistently documented that Plaintiff had full motor
19  strength of the high muscle groups and displayed a normal gait.  A.R. 27; *see also* A.R. 429, 451,
20  462, 475, 485, 498, 511, 522.  Plaintiff also submits that, while Dr. Vogal assessed her in "no
21  apparent distress," the "ALJ cannot isolate this statement as it is a term of art.  Docket No. 9 at 12.
22  Plaintiff further submits that this is "clear because to say that [Plaintiff] was literally not in any
23  distress is internally inconsistent with the remainder of the treatment notes."  *Id*.   However, the
24  ALJ noted that, since 2013, Plaintiff was typically described as in no apparent distress.  A.R. 27;
25  *see also* 429, 441, 451, 462, 475, 485, 522, 747.

26    The Court, therefore, finds that it was reasonable for the ALJ to reference the
27  inconsistencies between Plaintiff's subjective symptom testimony and the objective evidence in
28  the record when discounting her testimony.

a. Daily Activities

Plaintiff submits that the "ALJ stated in the decision that he was going to provide reasons for rejecting [her] subjective complaints by citing to her testimony, but he never did." Docket No. 9 at 15. For example, Plaintiff submits that the ALJ "recited [her] statement that she could walk for thirty minutes a day as an inconsistency but does not provide an [explanation] as to how this is inconsistent with her allegations." *Id*. Plaintiff also submits that the "ALJ did not explain the nexus between [her] ability to engage in the most basic routine activities with the rigors of full-time employment." *Id*. at 16. The Commissioner submits that the ALJ was justified in discounting Plaintiff's subjective complaints because her activities indicated that she was not limited as she alleged. Docket No. 12 at 8.

In general, an ALJ may consider a claimant's daily activities in determining credibility. *See* 20 C.F.R. §§ 404.1529(a), (c)(3)(i) (activities of daily living are relevant to the credibility determination); see also *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Even if the claimant experiences some difficulty or pain, her daily activities "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022)

Here, the ALJ discounted Plaintiff's testimony based on the record of evidence, most notably Plaintiff's statements indicating that she exercised. A.R. 28. Specifically, during the 2019 hearing, Plaintiff testified that she walked up to half an hour a day, used five-pound weights, exercised for about an hour a day, and had been exercising since before 2016. A.R. 55. During the 2021 hearing, Plaintiff testified that she went to the gym to use the treadmill or bike. A.R. 88.

It is not the Court's role to "second-guess" an ALJ's reasonable interpretation of a claimant's testimony. *Smartt v. Kijakazi*, 53 F.4th 489, 500 (9th Cir. 2022) (internal citations omitted); *see also Thomas*, 278 F.3d at 959 (affirming an ALJ's decision discounting a claimant's testimony after finding that the claimant "was able to perform various household chores such as cooking, laundry, washing dishes, and shopping"). Plaintiff criticizes the ALJ for not explaining the "nexus" between Plaintiff's activities and her ability to engage with "the rigors of full-time employment." Docket No. 9 at 16. However, after properly discounting Plaintiff's subjective

15

testimony in his decision, the ALJ did not need to include in his list of Plaintiff's daily activities "all of [his] caveats accompanying [his] description of those activities." *Kijakazi*, 53 F.4th at 500, n. 3. An ALJ may properly discount a plaintiff's subjective symptom statements based on her activities even when they suggest "some difficulty" functioning. *Cecilia H.R. v. Kijakazi*, No. CV 20-7836-JPR, 2022 WL 21320594, at *7 (C.D. Cal. Dec. 7, 2022) (internal citation omitted). The Court finds that the ALJ's findings regarding Plaintiff's daily activities are supported by substantial evidence.

### b. Medical Treatment

The Commissioner submits that "Plaintiff's improvements through treatment were also at odds with the alleged severity of her subjective symptoms." Docket No. 12 at 8.

An ALJ should consider the frequency, type, and effectiveness of treatment in weighing the claimant's allegations. 20 C.F.R. § 416.929(c)(iv)-(v). An ALJ is permitted to discount a claimant's testimony based on the effectiveness of treatment. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999); *see also Warren v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits"). Such evidence of medical treatment successfully relieving symptoms can undermine a claim of disability. *See* 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1). The conservative nature of treatment is a sufficient basis for discounting a claimant's testimony. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).

Plaintiff submits that her pain index is at a level 4, even while on Fentanyl and Percocet. Docket No. 9 at 12; *see also* A.R. 429. Plaintiff also submits she has reported pain at a level 5 and 7. *Id*. at 451, 462, 475, 522. Plaintiff has also testified as to her "constant pain." A.R. 341. However, Plaintiff also testified that the medications she took were helpful. A.R. 28; *see also* A.R. 56. In some circumstances, courts have rejected an ALJ's reliance on temporary periods of improvement to discount a claimant's testimony when the ALJ did not account for the overall diagnostic picture. *Gutierrez v. Saul*, No. 2:18-CV-02068-NJK, 2020 WL 972751, at *5 (D. Nev. Feb. 28, 2020) (internal citations omitted). Nonetheless, courts generally affirm an ALJ's reliance

on records showing nondisabling limitations even through there may be some evidence that could support a contrary finding. *Id*. The Court finds that the the ALJ gave specific, clear, and convincing reasons for discounting Plaintiff's testimony based on these findings.

**IV.   CONCLUSION**

For the reasons discussed above, the Court **DENIES** Plaintiff's motion to reverse and remand. Docket No. 9. The decision below is **AFFIRMED**. The Clerk's Office is **INSTRUCTED** to **ENTER FINAL JUDGMENT** accordingly and to **CLOSE** this case.

Dated: June 25, 2025

Nancy J. Koppe
United States Magistrate Judge